IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IRA LEE,

        Plaintiff,                    No. CIV S-05-0375 JFM PS

    vs.

SOLANO COUNTY PROBATION DEPT., et al.,

        Defendants.         <u>ORDER</u>

/

        Defendant's motion for summary judgment came on regularly for hearing December 8, 2005. Plaintiff appeared in propria person. Kathleen J. Williams appeared for defendants. Upon review of the motion and the documents in support and opposition, upon hearing the arguments of plaintiff and counsel and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

I. Undisputed Facts

        1. Plaintiff, an African-American male, was interviewed for the position of entry level deputy probation officer on August 30, 2004.

        2. According to plaintiff, he was 61 years old at the time of his interview.

        3. The interview was conducted by two supervising deputy probation officers, Phil Martin and Christina Cardwell.

4. Mr. Martin is an African-American male, who was approximately 47 years old when plaintiff was interviewed.

5. Ms. Cardwell is a Caucasian female, who was approximately 41 years old when plaintiff was interviewed.

6. The purpose of the interview was to evaluate each applicant's professional skills as an employee, interest in the job, apparent motivation, work habits, ability to reason under pressure and ability to effectively communicate, both in writing and orally.

7. The interview process for entry level deputy probation officer was comprised of two parts, an oral interview and a thirty minute writing exam.

8. Applicants took part in an oral interview comprised of seven questions.

9. The oral interview was calculated on a scale of 100 total possible points.

10. Mr. Martin and Ms. Cardwell awarded points to applicants based entirely on the applicant's ability to effectively reason through and communicate a response to the questions posed to them.

11. Mr. Martin and Ms. Cardwell, individually, took notes during the interview in order to refresh their memories for the purpose of scoring applicants at the end of each interview.

12. The notes taken by Mr. Martin and Ms. Cardwell were not a verbatim dictation of the answers provided by each applicant and do not accurately reflect the extent of the responses provided by each of the applicants.

13. Applicants were required to accumulate at least 70 points out of the 100 total possible points in order to qualify for employment with the Solano County Probation Department.

14. Mr. Martin and Ms. Cardwell calculated each applicant's scores individually and did not discuss an applicant's score until such time as both had completed their calculations.

15. The second portion of the interview process consisted of a thirty minute writing exam.

16. The writing sample was graded as either "acceptable" or "unacceptable."

17. The determination as to whether a writing sample was "acceptable" or "unacceptable" was determined independently by Mr. Martin and Ms. Caldwell.

18. During the oral interview, plaintiff received a score of 56 from Ms. Cardwell and a score of 59 from Mr. Martin.

19. Plaintiff's oral interview score alone rendered him unqualified for employment with the Solano County Probation Department.

20. Plaintiff contends he was informed that the interview results would be sent to the applicants two weeks after the interview was completed.

21. After plaintiff did not receive information regarding the status of his application for approximately six weeks, he allegedly contacted the Solano County Probation Department.

22. According to plaintiff, approximately six weeks after plaintiff's interview was conducted, he received a notice from Solano County informing him that his interview results had been "unsuccessful."

23. Plaintiff contends he was the only one that did not receive notification of his application results within the two week time frame.

24. Notification letters were sent to all unsuccessful applicants on October 14, 2004.

25. Plaintiff contends that, prior to applying with Solano County, he had "18 years in the probation field and had previously passed a much more difficult test."

26. Plaintiff also professes to have graduated from the University of California at Berkeley.

27. According to plaintiff, these factors rendered him a much more qualified candidate and made it "inconceivable" that he had been denied employment.

28. Plaintiff found it "inconceivable" he had been denied employment as an entry

3

1  level probation officer and filed a claim with the Equal Employment Opportunity Commission
2  ("EEOC").
3      29. Through the EEOC, plaintiff obtained a copy of the interview materials of
4  each applicant who interviewed for the position of entry level deputy probation officer with
5  plaintiff.
6      30. Four applicants were offered employment, including an African-American
7  male, a Caucasian male and two Caucasian females.
8      31. After plaintiff reviewed the applications, plaintiff concluded that Mr. Martin
9  and Ms. Cardwell "granted favor and privilege to two young, white applicants."
10     32. Plaintiff contends two Caucasian applicants under the age of forty, Jenny
11 Lakatos and Thomas West, should not have been selected to receive offers of employment over
12 plaintiff.
13     33. Plaintiff alleges that his responses to the questions posed during the oral
14 interview were "very knowledgeable and clear" while the answers of the two candidates who
15 received employment offers were vague.
16     34. Plaintiff's conclusions were based on incomplete notes taken by Mr. Martin
17 and Ms. Cardwell during the interviews.
18     35. Ms. Lakatos and Mr. West demonstrated the professional skills, motivation,
19 work habits, ability to reason and communicate skills required of an entry level probation officer.
20     36. Plaintiff alleges the same two candidates presented the worst writing samples
21 out of the ten applicants, while his was "far superior."
22     37. During plaintiff's interview, neither Mr. Martin nor Ms. Caldwell asked
23 plaintiff any questions, or otherwise discussed, plaintiff's age, race or gender.
24     38. The four successful candidates who were offered employment were Eric
25 Bennett, Jenny Lakatos, Joan Stinnet and Thomas West.
26     39. Thomas West, however, did not accept the offer of employment with the

County of Solano.

40. Ms. Cardwell tendered her resignation to Solano County on September 13, 2004, approximately one month before Mr. Martin sent the notification letters to all unsuccessful applicants.

41. Ms. Cardwell resigned in order to stay home with her two young children.

42. Solano County, Gemma Grossi, Christina Cardwell and Phil Martin did not discriminate against plaintiff based on his race.  (Plaintiff's response to Request for Admission, Set One, response no. 1, attached as Ex. A to Turner Decl.)

43. Solano County, Gemma Grossi, Christina Cardwell and Phil Martin did not discriminate against plaintiff based on gender.  (Plaintiff's response to Request for Admission, Set One, response no. 2, attached as Ex. A to Turner Decl.)

II. Request to Extend Discovery

Initially, the court notes that on November 16, 2005, plaintiff filed a request for extension of time.  Plaintiff states he discovered during depositions that the Writing Sample Guidelines provided to plaintiff by Solano County EEOC Director Joyce Hendy, who had been given them by the Solano County EEOC Compliance Officer, had not been used during his application process.  Plaintiff argues that there must be documents explaining to Ms. Hendy that the writing sample guidelines were not used.  Plaintiff further contends that defendants' statements under penalty of perjury in support of the instant motion that a "hypothetical approach was used in analyzing the writing samples," conflicts with the information provided to the EEOC Director and plaintiff, requiring additional time to "ascertain the true facts."  (Request at 2.)

On November 30, 2005, defendants filed an opposition to plaintiff's request for extension of time.  Defendants argue that plaintiff has failed to demonstrate the existence of facts necessary to prepare his opposition:

> [T]he [plaintiff] must show (1) that [he has] set forth in affidavit form the specific facts that [he] hope[s] to elicit from further discovery; (2) that the facts sought exist; and (3) that these sought-

5

after facts are essential to resist the summary judgment motion. State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

As noted by defendants, the burden is on plaintiff to demonstrate the information he seeks will create a triable issue of fact in order to oppose defendants' motion for summary judgment. "References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)." Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986). Here, plaintiff has provided no affidavit or declaration in support of his request for extension. Plaintiff has not alleged what additional facts exist that would preclude entry of summary judgment even were he granted additional time for discovery. Plaintiff's original complaint was filed on February 25, 2005, and he became aware of the information concerning the writing sample guidelines during the depositions of defendants which took place on November 10, 2005. (Opp'n at 2.)

Defendants note that on November 21 and 29, 2005, plaintiff informed counsel that he would be withdrawing his request for extension of time. (Opp'n at 4, Turner Decl. at 1-2.) During the November 29, 2005 telephone conversation, plaintiff "expressed his intent to withdraw his request for extension of time." (Opp'n at 4, Turner Decl. at 2.) On December 1, 2005, plaintiff filed a document entitled "Responsive Declaration and Objection to Motion for Summary Judgment," which this court construes as plaintiff's opposition to the motion for summary judgment. In his declaration, plaintiff makes various passing references to a need for further discovery, but again fails to identify specific facts he would support through further discovery, which is insufficient under Fed. R. Civ. P. 56(f).

It appears plaintiff pursued additional discovery while his request for extension was pending because he submitted responses to subpoenas as exhibits at the hearing on defendants' motion. (See Pl.'s Ex. A.) The responses to these subpoenas demonstrate that further discovery would not be fruitful. Both the Director of Human Resources for Solano County Department of Human Resources and Gemma Grossi, Chief Probation Officer for the

Solano County Probation Department, confirmed they had no documents responsive to plaintiff's requests concerning the hypothetical, its grading, or when the scoring guidelines were discontinued. (Id.)  In response to plaintiff's request to provide all documents that she informed Marilynn Brown of the EEOC the guidelines were not used when plaintiff tested for the position, Ms. Grossi declared she had no documents responsive to that request. (Id.)

In light of the above, plaintiff's request for extension is denied.

III. Standards for a Motion for Summary Judgment

Summary judgment is appropriate when it is demonstrated by a party that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A party may seek summary judgment on all or any part of another party's claims. Id.  The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  Summary judgment should be granted "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

/////

1  If the moving party meets its initial responsibility, the burden shifts to the
2  opposing party to establish that a genuine issue as to any material fact does exist. Matsushita
3  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
4  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
5  of his pleadings but is required to tender evidence of specific facts in the form of affidavits
6  and/or admissible discovery material in support of the contention that a dispute exists.  Fed. R.
7  Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must
8  show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit
9  under the governing law, and that the dispute is genuine, i.e., the evidence is such that a
10  reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
11  477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d
12  626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
13  In trying to establish the existence of a factual dispute, the party opposing
14  summary judgment need not establish a material issue of fact conclusively in his or her favor.  It
15  is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the
16  parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the
17  "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see
18  whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.
19  56(e) advisory committee's note on 1963 amendments).
20  The evidence of the party opposing summary judgment is to be believed, and all
21  reasonable inferences that may be drawn from the facts placed before the court must be drawn in
22  favor of the party opposing summary judgment.  Anderson, 477 U.S. at 255; Matsushita, 475
23  U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's
24  obligation to produce a factual predicate from which an inference may be drawn.  Richards v.
25  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
26  (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

IV.  Plaintiff's Race and Gender Claims

In plaintiff's responses to requests for admissions, plaintiff affirmatively responded to statements that defendants did not discriminate against plaintiff on the basis of race or gender.  (Turner Decl., Ex. A.)  In his response to defendants' statement of undisputed material facts, plaintiff agreed that these statements were undisputed.  (Undisputed Facts Nos. 55 and 56.)  However, in plaintiff's opposition to defendants' motion for summary judgment, plaintiff attempts to explain away his responses to these requests for admissions.  The court finds that plaintiff is bound by his responses to the requests for admissions and his characterization of these facts as undisputed, despite his attempt to explain his answers meant otherwise.  Accordingly, defendants are entitled to summary judgment on plaintiff's claims of race and gender discrimination.

V.  Age Discrimination

1. Legal Standards

California's Fair Employment Practices Act was repealed in 1980 and replaced by the Fair Employment and Housing Act ("FEHA").  See Cal. Gov't Code § 12900 et seq.  FEHA states that "it is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." Cal. Gov't Code § 12940.1(a).

The federal ADEA, 29 U.S.C. § 621 et seq., provides that it is unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

/////

individual's age." 29 U.S.C. § 623(a)(1). The prohibition applies to individuals who are between 40 and 70 years of age. 29 U.S.C. § 631(a).

Because the language and objectives of California's age discrimination statute closely parallel those of the federal ADEA, California courts have relied on federal ADEA case law in interpreting analogous provisions of the FEHA. Stephens v. Coldwell Banker Commerc. Group, Inc., 199 Cal.App.3d 1394, 1399 (1988). In applying the ADEA and FEHA, federal and state courts have employed the shifting burden of proof applied to Title VII discrimination claims as established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and modified by Texas Dept. of Commun. Affairs v. Burdine, 450 U.S. 248 (1980).

Under the ADEA, a plaintiff has the ultimate burden of proving that age was a "determining factor" in an employer's decision affecting him. Steckl v. Motorola, Inc., 703 F.2d 392 (9th Cir.1983), quoting Douglas v. Anderson, 656 F.2d 528, 531 (9th Cir.1981). Plaintiff must establish a prima facie case of discrimination under Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Plaintiff must demonstrate he was within the protected class, applied for an available position for which he was qualified, and was not hired for the position which was given to a younger person. See Steckl, 703 F.2d at 393.

Establishing a prima facie case does raise an inference of discrimination. Burdine, 450 U.S. at 254. However, "a plaintiff cannot defeat summary judgment simply by making out a prima facie case" if the employer articulates a legitimate, nondiscriminatory reason justifying the employment decision. Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.1991). The burden then shifts back to the plaintiff to demonstrate that the employer's reason was merely a pretext for discrimination. Steckl, 703 F.2d at 393.

2. Analysis

Individual defendants Ms. Cardwell, Mr. Martin and Gemma Grossi cannot be held liable under Title VII or the ADEA. See Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir. 1998)(individual employees cannot be held liable for damages under

1  Title VII and ADEA); See also Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587-88 (9th
2  Cir.1993)(same).  Congress intended to assess liability for employment discrimination only
3  against the employer.  Id.  Thus, plaintiff's claims based on the ADEA against defendants
4  Cardwell, Martin and Grossi are dismissed.
5         With regard to defendant County of Solano (hereafter "County"), plaintiff has
6  failed to establish a prima facie case of discrimination under Texas Dep't of Community Affairs
7  v. Burdine, 450 U.S. 248, 252-53 (1981).  It is undisputed that plaintiff was within the protected
8  class as he was 61 at the time of the interview at issue herein, and he was not hired for the
9  position which was offered to two younger persons.  See Steckl, 703 F.2d at 393.
10        However, plaintiff has failed to meet the second element, that he applied for an
11 available position for which he was qualified.  In his verified second amended complaint,
12 plaintiff declared he has "18 years of experience in the probation field," and "worked
13 continuously in the field of probation since 1985 in the Alameda County Probation Department."
14 (Second Amended Complaint at 1, 3-4.)  In his opposition to the motion, plaintiff asserts he was
15 "more than qualified for the position according to the job description" (id. at 3), but fails to set
16 forth any facts or evidence in support of his assertion that he was qualified.  Plaintiff does not
17 specifically state what position he held in the probation field.  He has provided no affidavits or
18 declarations attesting to his qualifications for the position of entry level probation officer.  See
19 Grant v. Tosco Refining Company, 1996 WL 590587 (N.D. Cal. 1996)(Grant filed declaration by
20 chair of college computer and information sciences department concluding Grant was more
21 qualified than the other two candidates.)  Because plaintiff has failed to demonstrate he was
22 qualified for this position, this court cannot find plaintiff has established a prima facie case of
23 discrimination.
24        However, even assuming, arguendo, the court were required to construe the
25 undisputed fact that plaintiff's 18 years' experience in the probation field qualified plaintiff for
26 the probation officer position, the court finds that plaintiff has failed to meet his burden of

establishing that there remains a genuine issue of material fact as to whether the legitimate reason offered by defendants was merely a pretext for age-based discriminatory motive.

      First, the court has determined that defendants have met their burden to rebut the presumption of discrimination. Defendant County has provided legitimate, nondiscriminatory reasons justifying the employment decision. It is undisputed that "[t]he purpose of the interview process for entry level deputy probation officer [was] to evaluate each applicant's professional skills, interest in the job, motivation, work habits, ability to reason under pressure and ability to communicate effectively both orally and in writing." (Grossi Decl. at 2.) In order to accomplish this goal, the defendant County administered an oral interview and a thirty minute written exam. (Grossi Decl. at 2.) Defendants contend that to qualify for the entry level position, the applicant must pass both the oral interview and provide an acceptable writing sample. (Grossi Decl. at 2.) Defendant has provided declarations from the employees who interviewed plaintiff stating that plaintiff failed both the oral and written portions of the application process. (Cardwell Decl. at 2-3; Martin Decl. at 2-3.) Both declared that plaintiff "did not display the reasoning skills and communication skills necessary to succeed as an entry level deputy probation officer." (Cardwell Decl. at 3; Martin Decl. at 3.) Both declared that plaintiff's "writing sample demonstrated a lack of ability to communicate through the written word." (Id.) By contrast, Ms. Cardwell and Mr. Martin declared that the two applicants ultimately offered the position "provided clear and precise answers to the oral interview questions" and "demonstrated the professional skills, motivation, work habits, ability to reason and communication skills required of entry level deputy probation officers." (Id.) It is undisputed that Mr. Martin and Ms. Cardwell calculated each applicant's scores individually and did not discuss a score until both had completed their calculations. Thus, defendants have met their burden and rebutted the inference of discrimination by providing legitimate, nondiscriminatory reasons for the employment decisions they rendered.

/////

Once defendant County produced evidence of legitimate, nondiscriminatory reasons for not hiring plaintiff, the presumption of discrimination "disappears." See Wallis v. J.R. Simplot Co., 26 F.3d 885, 892 (1994)(citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08 (1993). This is true even though there has been no assessment of the credibility of defendant at this stage. Id.; Burdine, 450 U.S. at 254. The court now turns to whether plaintiff has offered evidence sufficient to permit a rational trier of fact to find that defendant County intentionally discriminated against him because of his age. See Hicks, 509 U.S. at 510-11.

To survive summary judgment, plaintiff had to produce specific facts which either directly established discriminatory motive, or showed that the defendants' explanation for the employment decision was not credible. See Lindahl, 930 F.2d at 1438; Candelore v. Clark County Sanitation Dist., 975 F.2d 588, 591 (9th Cir.1992). Plaintiff has done neither. He has not offered evidence, other than his own subjective opinion, that he was more qualified for the position than the two persons ultimately selected. Plaintiff has provided no affidavits or declarations setting forth specific facts that he believes demonstrates he was more qualified than the other applicants, other than his bald assertion that his 18 years in the field of probation made him more qualified or that his answers to the written hypothetical were superior. Plaintiff applied to an entry level position; there is no evidence that this position was limited to applicants with experience in the probation field.

Plaintiff has provided no evidence of discriminatory motive or intentional discrimination. Plaintiff argues that because the EEOC officer provided plaintiff with an Entry/Journey Level DPO Writing Sample Scoring Guidelines form[1] that defendants are committing perjury when they declare they did not use a scoring guideline when grading the applicants in the hiring process at issue here. However, the scoring guideline form plaintiff was provided has no identifying features – it has no date and does not state who created it or which

---

[1] The form is appended to plaintiff's December 1, 2005 opposition as Exhibit C (page 14).

department employed it. The EEOC investigation took place after the interview process. The fact that this scoring form was included in the EEOC file provided to plaintiff is insufficient to raise an inference that defendants employed the scoring guideline in plaintiff's hiring process. The inclusion of this scoring form in the EEOC file does not raise an inference of discriminatory motive or intentional discrimination. Plaintiff has not demonstrated that the use of or the failure to use a scoring guideline raises an inference of discriminatory motive or intentional discrimination. On this record, the court cannot find it does.

In addition, defendants have provided a declaration of Cliff Merrill, Solano County Chief Deputy Probation Officer, who states "there were no policies or grading guidelines for determining whether or not a writing sample was "acceptable" or "unacceptable" on August 30, 2004, the day [plaintiff] was interviewed." (Merrill Decl. at 3.) Mr. Merrill declares new guidelines were created on or about December 7, 2004. (Id.)

Moreover, defendants refute plaintiff's arguments, contending that plaintiff failed not only the written portion of the interview process, but also failed the oral portion as well. The interviewing defendants and their supervisor have provided declarations stating that defendant County is an equal opportunity employer which does not discriminate against applicants on the basis of age. (Grossi Decl. at 3; Cardwell Decl. at 3; Martin Decl. at 4.) Each has unequivocally declared he or she did not discriminate against plaintiff on the basis of age or for any other reason. (Id.) Ms. Cardwell and Mr. Martin have declared that neither of them asked plaintiff any questions regarding his race, age or gender, nor did the subject of race, age or gender come up during the job interview. (Cardwell Decl. at 3; Martin Decl. at 3.) Ms. Cardwell and Mr. Martin declared their scoring was performed independently of the other before final hiring decisions were made. (Id.)

Contrary to plaintiff's assertion, nothing in this record suggests that the defendants' explanation for hiring the other two applicants was pretextual. Plaintiff has failed to produce "specific, substantial evidence of pretext and that age was a determining factor in the

decision." Steckl, 703 F.2d at 393. Although plaintiff assails the defendants' selection process as applied in his case, he has not shown whether or how that process unfairly impacted him based upon his age. Plaintiff's mere assertions that the defendants acted with discriminatory intent in failing to select him in favor of other qualified applicants were insufficient, without "substantial factual evidence," to preclude summary judgment. Id. Plaintiff has also failed to "tender a genuine issue of material fact" calling into question the defendants' explanation that the other candidates' written and oral responses were superior to plaintiff's. Id. The defendants' rejection of his application on that basis was not improper, and defendants are thus entitled to summary judgment on plaintiff's age discrimination claim.

VI.   Remaining Claims

Plaintiff alleges defendants were negligent in the hiring process. To the extent plaintiff is attempting to pursue a claim of negligence under Title VII of the Civil Rights Act of 1964, plaintiff has not alleged a cognizable claim. Negligence is not actionable under Title VII of the Civil Rights Act of 1964. Cotton v. City of Alabama, 812 F.2d 1245, 1248 (9th Cir. 1987).

Plaintiff contends he is raising state law claims of negligence in the hiring process. The court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367. However, when all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state law claims. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988). This court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's November 16, 2005 request for extension is denied;

2. Defendants' November 10, 2005 motion for summary judgment on the issue of race and gender discrimination is granted;

3. Defendants' November 10, 2005 motion for summary judgment on the issue of age discrimination is granted; and

4. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

DATED: March 1, 2006.

*[signature]*
UNITED STATES MAGISTRATE JUDGE

001; lee.msj